23-10273 Good morning, judges. I'm Ed Howard. I'm here on behalf of Rainesville, Alabama Police Patrolman Dean White. This court should reverse the district court's denial of qualified immunity because no controlling precedent put Officer Dean White on notice that he had a Fourth Amendment duty to intervene in the use of excessive force by jailers who were employed by another law enforcement agency, the sheriff, where it was outside his jurisdiction. So if it had transpired for, instead of a few minutes, 30 minutes, and you stood there and watched them beat the man to death, your argument would be the same? No controlling precedent? Out of his jurisdiction, which he wasn't. Well, we say that, I don't know the answer to that question, Your Honor, but it wasn't 30 minutes. And that was not the situation faced. The point I was trying to make is there is some standing by conduct so outrageous that you don't need another case directly on point with material facts exactly like these. And the question is where you get there. And watching that video, it's kind of hard to conclude that we're not there. Yes, sir. And I understand that it looks like that. Nonetheless, Your Honor, here's what we're saying, that under our law, he was outside his jurisdiction as this court noted. No, stop. The statute we sent you to be aware of, and I'm sure you've handled enough of these cases to be aware of it anyway. He had the authority, jurisdiction, I've noticed in your brief, is kind of used interchangeably with authority, but it's not interchangeable. He had the authority to make arrests in DeKalb County. Yes, sir, he did. The question on the failure to intervene is whether you had authority to do anything. Not whether your municipal jurisdiction stopped, I don't know where the lines are up there, but stopped five miles before the incident. He had as much authority to make arrests there as he did in downtown Rainsville. Your Honor, we say that it was not clearly established, and one reason we say that is because this court held in 2020, Robinson v. Ashe, this court, three circuit judges in the district court below them, held that an officer exceeds his authority when he takes police action on a potential crime that did not occur in the officer's own jurisdiction. Yes, but his jurisdiction to make arrests are to intervene as a law enforcement officer. Well, yes, sir, but this court said- So he's arrested the guy, he's got him in custody, he's driving through the county to drop him off at the jail, right? Yes. When he got to the end of the city, he didn't have to let the guy out because he didn't have any jurisdiction to make an arrest outside of the city, right? I mean, he's holding the guy in custody. Yes. I just don't understand this argument. I mean, how can he arrest and keep in custody the plaintiff and then you say he doesn't have any jurisdiction to do anything? He had the juke, Your Honors, inside that jail. I mean, he's not going to Canada, right? Yes, sir. What I'm saying is that it was not clearly established as evidenced by this court's holding in Robinson v. Ashe where it held that that officer was trying- That officer, although he had the authority to make arrests in the county, that did not compel the conclusion that he had authority for other non-arrest activity. Yes, an arrest would have held up as having lawful authority to arrest under 1510.1. But, I mean, I guess, so the talk of authority, I mean, did he have authority or not, jurisdiction or not? Did he have some obligation to do anything, to say anything? Not necessarily to arrest these guys in their own jail, but did he have the obligation to do anything? Well, Your Honor, going back to what this court held about Alabama's arrest scheme, if you say he is not talking about the arrest, then he did not have the authority for non-arrest activities. What about- That's what this court said. What about this? This is my concern. It's not actually that he should have tried to arrest these jailers or done something. It's that this man who he's delivering to the jail is someone that he arrested and was in total, you know, like a minute before this, was in his custody. I mean, that's my sort of just the weirdness of this is to say, well, look, I picked him up. I brought him to the jail. I got him out of my car. I gave him to these guys, and then they started beating him up. And as, you know, Judge Conner, what if they had just killed him or something in front of him? It seems weird to sort of disclaim responsibility when you're the reason he's in the jail in the first place and you're just standing there and seeing him being beat up. Well, yes, sir, but when he arrives there, as the facts and the records show, he removed his handcuffs, removed his town's shackles, and he turns them over to the jailers. And at that point, they go into the custody of the sheriff of DeKalb County. Under Alabama law 14101, the sheriff of DeKalb County, the sheriff of any county, is empowered and authorized to operate the jail. He's in there with men who do not work for him, who work for the sheriff. There's three of them, one of him. Do we know, by the way, and maybe I dismissed this in the record, but if he has sort of no authority inside this jail, why did he stick around? What was he doing? He was kind of looming on the video. That information is not in the record, Your Honor. But I guess sort of the logical implication of your position is that he had like no business being there. Like he should have, as Judge Frasher says, like turned him over and left immediately. Being his lawyer under the circumstances now, Your Honor, if he asked me that question, I'd say, yes, you need to turn him over and leave. But that's not what was going on here, Judge. Right. But that still gets away from the question. Is there a controlling precedent under this circuit, under the U.S. Supreme Court, or under Alabama Supreme Court that tells him that when he's in there with sheriff's men that he has no authority over in their jail where they have jurisdiction? There's three of them. What do you mean by jurisdiction? Your Honor, jurisdiction, I talk about what this court talked about in Robinson being the physical geographic limitations. Was Robinson inside the county? Robinson was both. In Robinson, it was a next-door county, but he did non-arrest activity inside Houston County. Yeah, but he wasn't in his county. Let's call it his county. When the arrest was made, he was with the next-door county's sheriffs or deputies. Which doesn't implicate 1510.1 that says he has authority. All the authority is a law enforcement officer that he would have in the police jurisdiction if he's in the county. Yes, but what this court held there was. . . No, we didn't hold it. We may have said it, but we couldn't have held it if he wasn't in the county. This court said that the authority to make arrests in Houston County, he was a Dothan officer, did not compel the conclusion that he had authority for non-arrest activity at issue here, which was outside. . . Outside the county. Well, of course, the 1510.1 doesn't apply outside the county. Yes, sir. That's entirely distinguishable. This court went on to say, Generally, Alabama's statutory scheme cabins a city officer's authority limiting their operations to a few miles beyond the city limits. The statutory scheme goes on to say, Statutory scheme anticipates that a city officer can make an arrest outside his city's ordinary jurisdiction only for criminal activity that partly unfolded inside his jurisdiction. So what I'm saying, Judge, is this. Yeah, but those weren't the facts in the case. It wasn't within the county, but outside the police jurisdiction, outside the municipal jurisdiction, the police jurisdiction. So you can't apply that as a holding. In calling it a holding, you're misrepresenting it because it doesn't involve what we have in this case, which was an officer within the county in which his jurisdiction existed has jurisdiction as a law enforcement officer in that county. Yes, sir. But Robinson does apply to other acts besides making an arrest. No, it doesn't because it was outside his county. Yes, sir, but he was being held liable for acts inside his, for non-arrest activity inside his county, outside his jurisdiction. That's not the way I read, Robinson. Let me ask you this. So this is what the district court said. The district court didn't address this jurisdiction inside the county thing at all. The district court just said that, look, the Eleventh Circuit has clearly established, quote, and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance. And the district court says, look, that's the clearly established law. I think what the court was really doing was sort of saying, look, that's kind of like a clearly established principle, you know, under that kind of provision of clearly established. Why isn't that good enough just to say, look, that's the law? We've said that over and over and over again. You know, whether the specific facts may be different from one case to another, it doesn't really matter. Because, like, that's the clearly established law. Why shouldn't we just do that? Yes, well, and the district court was particularly relying on Priester v. Riviera Beach. That was the dog case where the sergeant didn't call off the patrolman, the canine patrolman who didn't call off the canine. And in that case, that was one of those that the district, that's the one the district court relied on. Because the other one that the district court relied on, Bailey, was unpublished, which cannot be used to establish clearly established law. Well, the one I just read was Velasquez v. City of Hialeah, and then there's Byrd v. Clark. But I guess I get the point. I think you're right about this. There's no case directly on point that looks exactly like this case. I don't think the district court was saying that there was such a case. I think what the district court was saying was that there's this well-established, generally established principle that, you know, if you're an officer who's present at the scene and you don't take reasonable steps to protect the victim of another officer's excessive force, then you're liable. And, you know, that's the sort of, and it's not the, there's an identical case. It's the second or third way of getting around qualified immunity, which is a generally clearly established principle. Why doesn't that principle work? Because that principle does, and I'm getting close to my time. You can finish, you can answer Judge Brasher's question quickly. It does not apply because it does not have the particularized kind of facts upon which qualified immunity decisions are made. And I repeat, outside his geographical jurisdiction, no command authority over these men. They're not under his control. We've at least eight times said you don't have to be a supervisor to be subject to the duty to intervene. And I repeat, the other items that go with this qualified immunity, three on one, no pistol, no gun. We say the court, the district court was wrong, and this court should reverse and grant qualified immunity. So if an officer in the heart of his police jurisdiction sees three thugs beating up an old lady and is afraid they'll beat him up too, he hasn't violated his duty. That's not excessive force failure to intervene from police officers like this case is, Your Honor. What if the officers happen to be the three thugs beating up the lady? Uniformed officers beating up a lady. Three of them, one of them's the meanest officer in the state of Alabama. I don't know, Your Honor. That's a good question, but that's not where we are. Okay, very well. Thank you, Judge. All right, you've got three minutes of rebuttal time remaining. Mr. Sykes, let's hear from you. May it please the Court. I am up to the court floor. I did not take seriously the claim that was made in the original brief filed by the appellant in this case that qualified immunity could possibly figure into this. I addressed most of my argument or a lot of it to the other affirmative defense that was played in the case. There were only two defenses played in this case. One is that this defendant did not have enough time to intervene or opportunity to intervene. That's primarily what I addressed in my brief and that was what we fought the case on below in the district court. I was sort of taken aback that the argument was made in the brief that Mr. Howell filed that this was qualified immunity. It was so far past me, and Judge Carnes has absolutely nailed the case. I thought this is conduct that is so outrageous that it doesn't need any case to have been specifically outlined. Well, in fairness, now that we're here and we're talking about qualified immunity, obviously, I'm not sure it's a winning case for the other side, but it's not a frivolous case. We've said lots of things about the duty to intervene. I agree with Judge Carnes. We've said you don't have to be a supervisor. But we've also said lots of really muscular things about qualified immunity, that you've got to be a knowing miscreant or sort of incompetent. So would any competent officer, given the constellation of circumstances that Mr. Howard talks about, sort of technically in some sense outside his, quote, unquote, jurisdiction, outgunned, outmanned, whatever, would every single competent officer definitely have known? That's his strongest case, I think. So just respond to that. I can't tell you every single one. Every reasonable. Objectively reasonable one would, yes. And I never viewed it any other way and couldn't imagine that the argument would be made that it could be viewed that way. Again, I'd like to judge – Carnes, I apologize for missing your opinion in Cantu, but Cantu looks like it is exactly on top of it. I actually don't know about that. And maybe this is a question about how to consider the facts here. I mean, so the officer, the way – I mean, I've watched the video several times. I mean, the officer sort of delivers the plaintiff. These other officers are kind of over there in the corner. They're kind of like slapping him around and stuff. And then things get a little rough. And the officer who we're talking about, the defendant officer here, kind of just leaves. Just kind of turns around and leaves.  And then things get really bad after he leaves. I kind of agree if he had stayed the whole time, any reasonable officer would have said, whoa, whoa, whoa, this is nuts. You've tased the guy three times. You're kicking him. Like, this is insane. But that really didn't happen before he left. Your Honor, first of all, I think, Your Honor, one, underestimates the amount of physical force applied before he left the room. But again, I don't – Well, correct me on that then. Well, you can go through the order that the district court entered and where the district court states – Let me find it. Pardon me. Let me ask you this, just so you don't waste your time thumbing through the district court's order. This court said that he left the room 27 seconds after the assault began. Yes, sir. He, again, and I invited him in my brief. I asked the court to have your wife or your law clerk or whatever, have you close your eyes and you imagine a beating going on in front of you and for your wife or your clerk to tell you when 27 seconds elapsed. Well, the good news is we've got the video. We don't have to close our eyes or ask anybody. We watched the video. Well, you don't. You can. You can watch the video again. Let me ask you this about the video. So he leaves the first time, and then it looks to me like someone who I think is him. You see at least the bottom of a body and maybe sort of come back into view outside the door when some of the rough stuff is happening, and he's there for another period of seconds before finally turning tail and leaving. Is that him? I can't tell whether it is. I've looked at the same thing you have, and I've used 27 seconds is when we definitely know that it is him that is witnessing this. And, Your Honor, here's the question I would pose, though, to Judge Brasher's question, and that is let's suppose instead of him leaving the room after 27 seconds, he had stayed in the room, but he had simply closed his eyes and shut his ears. Does he get credit for what happens? Is he absolved from whatever happens thereafter? This beating went on again for three or four or five minutes at least after he was there in the room. And you mean he gets absolved from liability for turning a blind eye to this? I don't buy the fact that he left after 27 seconds does anything, but I think further condemn him for the failure to walk out to the front desk and say, hey, there is an assault on a prisoner going on, an unarmed prisoner who is non-resisting back there in whatever room this was. He didn't do that. He left the premises, I suppose rode back to Rainsville. Actually, in his affidavit, he says he went outside, got in his car, and called his chief. Called his chief. Again, in Rainsville, 47 miles. No, no, no. It's about 10 or 12 miles. That's all as far as it is? I didn't trust my memory and I did a Google. It was longer than the chief could have gotten there and intervened. Yes, sir. So the question is, couldn't he have contacted somebody else there? Or even, we've said at least you've got a duty to verbally tell the officers to stop. Yes, sir. He said in his deposition as opposed to, well, he said it more in the affidavit, he was afraid to do it. Yes. Afraid to do it. He raised cowardice and he raised ignorance. He said, I didn't know I had any. Well, that's completely, those were not pled defenses, but they were put up in deposition or thereafter. That I was ignorant of I had the responsibility to do that, well, that's no defense. It was the law, it was no offense. He's, again, pled cowardice. I was afraid for my own personal safety. Well, cowardice is not a defense. Well, his deposition said, did you recognize that what the three of them were doing was unlawful? And he said, yes. Do you have any excuse or explanation for why you did not do anything to stop or try to stop them? Quote, because I did not know what the hell to do when there were three officers beating an inmate. And he let him slip on this one. Did it not occur to you to contact somebody else in higher authority with the jail to alert them? Well, that's what's going on at your jail. Key point. Answer, I believe they did get alerted later on. Question, I'm not talking about they got alerted by somebody else. Did it occur to you that you should make an effort to alert whoever the supervisors were at the jail? Actually, you got him on this. No, that didn't occur to you. No. That plays into his ignorance thing, but it also, I don't think it hurts your case particularly. Judge, again, with deference to the court, and I'm really in a little bit of a puzzle here about why this court thought this case requires oral argument. To me, this case . . . I disagree with you about that. I'm sorry. It needed a deep dive. Sometimes cases go to oral argument because we have questions. And sometimes, and or, they go to oral argument because three of us need to sit down in a little room back here and discuss it. So you get nowhere. I have seen cases. I saw one one time, an oral argument on the deal. I was reading the brief and said, what idiot sent this to oral argument? And I looked at the screening sheet and it was me. So, you know, there's some play there. But we're here there. And, you know, you're talking about the issues. The only reason this case is here is to qualify immunity defense. It's the only reason. Let me ask you the question why I would like to have oral argument. So there are three ways to get around qualified immunity. One is you've got a case directly on point. I think you agree you don't have a case like this one that you're pointing to. I don't know. I can't say that, Your Honor, because I don't know the degree of particularity, how granular you're going to get with regard to that. Well, you don't have a case where somebody delivers a guy to a jail and the jail people start beating him up, right? No, sir. Okay. So that one, I think, falls away. I think you started by saying this was a case of sort of obvious clarity. And then the other route is the broader, clearly established principle. And so when I read the district court's opinion, it doesn't explain, frankly, why they think this is a case of no qualified immunity. But when I read the district court's opinion, it looks like it's saying that there's a broader, clearly established principle. Could you just explain why you think that a broader, clearly established principle covers this scenario? Well, again, I would point back to Judge Karn's opinion in Cantu. And if I may have the liberty to quote from it. Go ahead. With extreme factual circumstances, a preexisting decision with material similarity is not always necessary to establish the applicable law. Plaintiffs can clear the established law hurdle and defeat qualified immunity by showing that the officer's conduct was so obviously at the very core of what the amendment prohibits, that the lawfulness of the conduct was readily apparent to the official. Your Honor, the whole purpose in this body of law is to prevent law enforcement officers who have persons in their custody from being able to physically assault them. I don't know. This looks to me to be a case of the forest being hidden by the trees. You have a policeman who arrests somebody on the most minor non-violent misdemeanor, transports him to a jail where he delivers him to three correctional officers, and he remains there while the three correctional officers closer than you to me beat the guy for 27 seconds. And it shows no indication that it is going to stop. And his response is to walk over to the door to look back and to look for another couple of seconds and then to leave the premises. Your Honor, I just it's hard for me to understand how that could not be obviously what is within the core of what this body of law is intended to prevent, and is intended to provide a remedy for. And that's why I suppose that I underestimated the qualified immunity defense in assessing how to come here and to argue this case. This clearly fits within Judge Korn's language in Cantu. It is requiring plaintiffs to find a materially similar pre-existing case is a rigid gloss on the qualified immunity standard. That's quoting from the Hope case where the U.S. Supreme Court reversed this court on a similar point. The facts were alleged in Hope, and the violation was obvious. Well, that's the point here. Again, I'm trying to see why the trees are interfering from being able to view the forest. This is a case where this is exactly what this body of law is developed for. Police cannot stand by and watch another police officer beat another, an arrestee, detainee, without attempting to intervene. There just is no defense to it. Again, I ask him, I ask him, the defendant in this case, the only reason he gave us is I didn't know what the hell to do. Well, that's not, the fact he didn't know what to do, I don't think is a defense. The law places that duty on him to intervene, and he did not do it. I'm not suggesting any view on the merits of such a motion, but did you move to strike his affidavit on sham affidavit basis? I moved to strike a couple of, but no, I don't think I did that. But again, what I would point out to you is his affidavit is obviously composed by his lawyer. And you've never done that. I have. I think it might be malpractice not to do that. I have, and that's what my client told me. I asked the guy what his excuse was in his deposition. This is a month or two before the affidavit came out. He didn't say any of that that's in his affidavit, in his deposition. I asked him what excuse you have for it, and he said, I didn't know what the hell to do. He didn't offer, I didn't have enough time to do this. I was out of my jurisdiction. You know, all of these, this panoply of other things that have been coming. Qualified immunity, he doesn't have to subjectively do it for the reason that the objective competent officer could have done it. It's whether any reasonable officer. Exactly. And it is beyond my comprehension that this could be a close case on whether any reasonable officer could think that, oh, I can sit by idly and watch this meeting occur without any, I have no obligation to do anything. All I've done is arrested this guy and brought him here and put him into the custody of these people who now are doing something that he admitted was unlawful. He admitted, he recognized that those three correctional officers beating this guy, Mr. Newt, was unlawful. All right, so I'd say what we've let you go over, but I think we understand your case. Thank you so much. Yes, sir. Mr. Howard, you've got three minutes of rebuttal time. And let me ask you, if you don't mind, to respond to the question that Judge Brasher asked. You know, we've said some version of this a million times to what I call the second bucket of qualified immunity, the clearly established, broad principle that applies to the facts of the case. Why not this? And Judge Carnes, I think, might have asked you about this earlier from Bird. If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation, such as an unprovoked beating, takes place in his presence, the officer is directly liable under Section 1983. Like, why is that not a clear principle, especially given the supervisory or not? No authority, just like as a human being. For one thing, Your Honor, Bird, I believe, was under 14th Amendment. That would not be a statement of established law under the Fourth Amendment, I believe. Number two, Your Honor, again, we fall back to controlling. We fall back to the principle that notice is the linchpin of qualified immunity. Notice to the officer that what he's doing or not doing is a violation of the Fourth Amendment to U.S. Constitution. And regardless, and I understand the idea in Cantu that cited hope. And I would suggest to you that since hope, the Supreme Court has not found another case like heart of, I think it goes to the very heart or core of the Fourth Amendment. The cases cited in Cantu as following hope, the Swafford case, those several other cases in that paragraph, they all are precedent cases that the Supreme Court used. And so it's our position that despite the fact that the Supreme Court says that in hope, that the cases it's actually used, the Supreme Court has used, have been based on the precedent. We would say here that this is not an obvious clarity case, if that's bucket number two. No, bucket number two, I think, is not obvious clarity. It's not core of the Fourth Amendment. It's the idea that there's a well-established principle. Yes. The principle is well-established, Your Honor. Okay. Whether this officer knew about it or not, the principle is well-established. So why isn't the district court's reasoning, which, like I said, the district court didn't say which bucket it was going under, but the district court quoted the same stuff that Judge Newsom just quoted and said, look, this is a well-established principle. Now, look, whether this particular officer is liable or not, you know, jury is going to determine that. But, like, the principle is really well-established. No need for a case that says, like, on these specific facts. Like, why isn't this that kind of case? Well, the district court did say this is like Priester, and it's denying qualified immunity. So I would be remiss if I didn't come to you and say this case is not Priester. Yeah, I agree with you. So you got me on that. That's why I'm asking you about the other one. But that's because those cases, again, do not have these facts. And I've argued with – I know I've argued with Judge Carnes about jurisdiction and arrest. We have a geographical difference in jurisdiction. We have somebody who is in a jail operated by the sheriff. We have someone who's outnumbered three to one. We have somebody without a pistol. We have somebody – and you'll see this in the video. If you look around, there's a jailer that comes in four seconds before my guy leaves. He's acting like this is normal stuff. And my guy says in his affidavit, the only concern about which is whether it's true or not. And I'll remind you the affidavit itself says I was not asked these things in my deposition. Whether it's true or not is the only concern. And he says nobody else in there is lifting a hand, so I'm not going to get any help from them either. And something we didn't mention, and thank you, Judge Carnes, for mentioning it. He did do something. He went and called his police chief. That is something. Very well. Let me ask one quick question. I'm kind of sympathetic on the three-on-one thing, particularly in his affidavit. You did a good job on the affidavit. But here's my question. Is there anything that would lead an objective observer to believe that because the officers, other than the core of what they were doing, because the officers were beating a man who was out of his mind on drugs, couldn't defend himself, unlikely to complain much or might be unlikely, they would beat a fellow officer who told them, y'all need to stop that, you're going to get in trouble, don't do that? Judge, all I can tell you is there's no evidence to the record either way. Either way, okay. Yes, sir. Let me ask you another thing. Yes. I apologize. I'm just curious. How much time did those three officers get? I do not know. I know that there were, I believe there were second-degree felony assault charges, I believe. Okay, thanks. All right, very well. Thank you very much. That case is submitted. We're going to take a brief recess. We will be back at 11 o'clock sharp. All right. I have a little question. No, it goes opening. You mean the first one today. Yeah.